# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

ESTATE OF DR. JOHN ELLIS, JR.,
and THE JDE TRUST BY MARK J.
PODLIN, ATTORNEY AT LAW, P.C.,
AS EXECUTOR & TRUSTEE,

    Plaintiffs,

v.

AMERICAN ADVISORS GROUP (INC.),
and MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,

    Defendants.

CV 2:18-070

## ORDER

Before the Court is Defendants' Motion to Dismiss First Amended Complaint, dkt. no. 19. This Motion has been fully briefed and is ripe for review. Many of the Counts of the Amended Complaint are due to be dismiss because—despite the opportunity to correct pleading deficiencies—the certain counts of the Amended Complaint remain largely shotgun in nature. The Amended Complaint largely fails to link factual allegations to specific causes of action, contains multiple causes of action in single counts, fails to comply with Fed. R. Civ. P. 8(a)(2), and includes a forty-paragraph (the paragraphs are mis-numbered starting at the first paragraph 15) Affidavit of an individual occupying four roles: witness,

Plaintiffs' sole attorney (at the time of filing), Executor of the Estate, and Trustee of the Trust. The affidavit conflicts with many of the allegations set forth in the Amended Complaint and leaves the reader to guess at which elements, counts, or contentions a given paragraph addresses. Some paragraphs seem rooted in the affiant's role as advocate, some as party representative, and some as purported factual witness. The Court has spent considerable time attempting to decipher and place the provisions of the affidavit into the causes of action enumerated in the Amended Complaint.

Although the Court is not required to "sift through the facts presented and decide for [itself] which are material to the particular cause of action," Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1296 (11th Cir. 2002) (citation omitted) (alteration in original), it, nevertheless, has endeavored to "rummage through page after page of facts and conclusions to make independent determinations regarding what allegations, if any, fit with each claim, if any," Carvel v. Godley, 404 F. App'x 359, 361-62 (11th Cir. 2010). After sifting and rummaging, and after the benefit of oral argument, the Motion to Dismiss is **GRANTED in part and DENIED in part.**

## BACKGROUND

The facts stated herein are taken solely from Plaintiffs' Amended Complaint and are assumed to be true pursuant to

Rule 12(b)(6). On October 1, 2014, Dr. John Ellis took out a Reverse Mortgage from Defendants for $259,305.09 against his home on St. Simons Island, Georgia. Dkt. No. 18 ¶ 7. The home at the time had a Fair Market Value of $1,499,000. Id. In order to induce Dr. Ellis to take out the reverse mortgage, the Loan Originator for AAG, Sean O'Brien, told Dr. Ellis and his attorney Mark Podlin that the beneficiaries of his trust estate and his will would have one year from the date of Dr. Ellis' death to sell the house. Id. ¶ 9. More specifically, Sean O'Brien "said that the Estate and JDE Trust would need to notify [AAG] that Dr. Ellis had died within six months of the date of his death and then show them we had the house being actively marketed for sale in order to also get two additional 90-day extensions of time for selling the house." Dkt. No. 18 at 26 (¶ 13).[1] In addition, on August 13, 2014, Dr. Ellis and Podlin spoke with a Reverse Mortgage Advisor Counselor, Beth A. Sloan, who worked with a company called GreenPath Debt Solutions. Id. ¶ 10. Sloan told Dr. Ellis and Podlin that the Ellis Estate would have one year from Dr. Ellis's

---

[1] Attached to the Amended Complaint is an Affidavit. The Court notes that this affidavit is, in large part, improper because it contains innumerable "conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1322 (11th Cir. 2015). In order to be thorough, the Court endeavored to consider it when possible in ruling on this Motion. It should be noted that even if the factual assertions are taken as true, dismissal of the Counts due to be dismissed would still be warranted.

death to sell his home prior to it being sold via foreclosure. Id. ¶ 11.

On June 26, 2015, Dr. Ellis died. Id. ¶ 8. Shortly after Dr. Ellis's death, Podlin spoke to an AAG representative who told him that if the Ellis Estate was actively working to improve and sell the home and the Ellis Estate notified AAG of these facts before December 26, 2015, then the Ellis Estate would have one year to sell Dr. Ellis's home. Id. ¶ 12. Shortly after this conversation and in order to prepare the house for sale, Podlin, the Executor and Trustee of the Ellis Estate, arranged to have the wood floors refinished, the carpet replaced, the house repainted, and certain repairs made. Id. ¶ 13. In early December 2015[2] and after the repairs were complete, Podlin spoke with an AAG representative and told her that the Ellis home had been fixed up for sale and was listed with a realtor at a price of $1,499,000. Id. ¶ 14. The AAG representative informed Podlin that the Ellis Estate would be given until at least June 26, 2016, to sell the house before AAG would begin foreclosure. Id. Podlin sent AAG a letter confirming this information. Id. The realtor listed the home for sale in the Multiple Listing Service of the Golden Isles Association of Realtors. Id. ¶ 15.

---

[2] The Amended Complaint states early December 2014, but the Court construes this as a typographical error.

On March 1, 2016, Defendants placed an advertisement in the Brunswick News that represented that the security deed executed as part of the reverse mortgage loan was in default. Id. ¶ 16. The notice also stated that Defendants were foreclosing on the Ellis home due to the default. Id. The advertisement chilled the market for the sale of the home: after it was published, virtually no real estate agents or brokers would consider recommending the home to potential buyers. Id. ¶ 17. More specifically, Podlin was in contact with two potential buyers, who were considering the offering price of $1,499,000. Id. ¶ 18. After the advertisement, however, the potential buyers aggressively negotiated for a much lower price. Id. On June 10, 2016, the house was sold to one of those potential buyers for $1,145,000. Id. ¶ 19.

Several weeks after the advertisement was published, Defendants stopped the foreclosure process. Id. ¶ 20. Shortly after the process was stopped, an employee of AAG, Brandi O'Brien, called Podlin and explained why the foreclosure was begun and why it was stopped. Id. ¶ 21. The Amended Complaint alleges that in that call, O'Brien said:

> I'm sorry. We just screwed up. We made a mistake. It's our fault. There was no default. You did everything you were supposed to do. The department that received your letter in December was partying over Christmas and with all the Christmas partying and festivities, they just never got the message to the foreclosure department that they had received the letter from you and that we shouldn't start foreclosure.

Id.

AO 72A
(Rev. 8/82)

Due to these events, Plaintiffs filed this action seeking damages under various state law causes of actions.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a plaintiff's complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), a district court must accept as true the facts set forth in the complaint and draw all reasonable inferences in the plaintiff's favor. Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Although a complaint need not contain detailed factual allegations, it must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The Court accepts the allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. Ray v. Spirit Airlines, Inc., 836 F.3d 1340, 1347 (11th Cir. 2016). However, the Court does not accept as true threadbare recitations of the elements of the claim and disregards legal conclusions unsupported by factual allegations. Iqbal, 556 U.S. at 678-79. At a minimum, a complaint

should "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." Fin. Sec. Assurance, Inc. v. Stephens, Inc., 500 F.3d 1276, 1282-83 (11th Cir. 2007) (per curiam) (quoting Roe v. Aware Woman Ctr. for Choice, Inc., 253 F.3d 678, 683 (11th Cir. 2001)).

## DISCUSSION

Plaintiffs' Amended Complaint states the following claims for relief: (1) Count I, Breach of Contract; (2) Count II, Wrongful Attempted Foreclosure; (3) Count III, Negligence by AAG for failing to notify its foreclosure department not to foreclose; (4) Count IV, Negligence by Defendants for wrongful attempted foreclosure; (5) Count V, Intentional or Negligent Breach of a Private Duty; (6) Count VI, Breach of Fiduciary Duty; (7) Count VII, Elder Abuse in Breach of a Private Duty; (8) Count VIII, Confession of Liability for Negligence and Mistake; and (9) Count IX, Misrepresentation and Fraud.

**I. The Amended Complaint States a Claim for Promissory Estoppel and Wrongful Attempted Foreclosure**

Although it is close, the Amended Complaint alleges just enough to satisfy the dictates of Twombly and Iqbal to survive this stage. Looking at Count I, the Court finds that Plaintiffs state a plausible claim against AAG but not MERS. Turning to Count II, Plaintiffs allege just enough to state a claim for wrongful

AO 72A
(Rev. 8/82)

attempted foreclosure against AAG but not MERS. Accordingly, the Motion to Dismiss with respect to Counts I and II is due to be **GRANTED** with respect to MERS and **DENIED** with respect to AAG.

**III. The Amended Complaint Fails to State a Claim for Negligence**

Counts III and IV set forth claims based in negligence. Count III alleges that AAG was negligent in December 2016 by failing to notify the proper department that it had received notice from the Ellis Estate that the Estate made home repairs and was actively marketing the house for sale with a realtor. Count IV alleges that both Defendants were negligent by publishing the foreclosure advertisement that allegedly contained untrue statements that the borrower was in default.

> To state a claim for negligence under Georgia law,
>
> a plaintiff must allege: (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the duty.

Fenello v. Bank of Am., N.A., 926 F. Supp. 2d 1342, 1353-54 (N.D. Ga. 2013) aff'd, 577 F. App'x 899 (11th Cir. 2014) (quoting Burch v. Chase Manhattan Mortg. Corp, 2008 WL 4265180, at * 15 (N.D. Ga. Sept. 15, 2008)). Regarding the legal duty element, "[m]ere failure to perform a contract does not constitute a tort. A plaintiff in a breach of contract case has a tort claim only

where, in addition to breaching the contract, the defendant also breaches an independent duty imposed by law." D.J. Powers Co., Inc. v. Peachtree Playthings, Inc., 820 S.E.2d 217, 222 (Ga. Ct. App. 2018), reconsideration denied (Nov. 15, 2018) (citation omitted).

Both of Plaintiffs' negligence claims must fail because they are not grounded in an independent duty but arise only because of the contractual relationship between Plaintiffs and Defendants. Regarding Count III, Plaintiffs allege that AAG's failure to notify the proper AAG department constituted a breach of its duty to notify the proper department. This alleged duty only arises from the alleged contract that allegedly required AAG not to foreclose for a year from Dr. Ellis's death. Regardless of whether this contractual duty existed, the basis of this alleged duty is in contract. Indeed, Plaintiffs recognize as much: "AAG employees promised the Ellis Estate that they would not foreclose. . . . AAG clearly breached its duty. The Ellis Estate is entitled to damages for breach of that duty, regardless of whether that duty arises from a duty of care under tort law theory or under contract law theory." Dkt. No. 21 at 12. Plaintiffs fail to establish a non-contractual duty, and their conclusory statement that Defendants breached a "duty of care under tort law" does not transmute the origins of that duty from contract to tort.

Turning to Count IV, Plaintiffs do not even make the conclusory statement that a duty not to publish untrue statements in a foreclosure advertisement existed independent of contract. Indeed, Plaintiffs argue that "defendants also breached their contractual duty under Reverse Mortgage regulations when they falsely reported in the Brunswick News to the public that the borrower was in default, when it was not in default." Dkt. No. 19 at 12. Thus, Plaintiffs ground their Count IV negligence claim in a contractual duty. To the extent that Plaintiffs attempt to ground such a duty in federal regulations separate from the reverse mortgage agreement, Plaintiffs do not provide the regulations creating such a duty. Without these regulations, the Court cannot say that this duty grounded in federal regulations plausibly exists and was violated. Accordingly, this claim must fail as well.

Count VIII also talks about negligence but does not set forth a cause of action. Instead, the Count consists of one paragraph in which Plaintiffs argue that Defendants admitted that they mistakenly wrongfully foreclosed on the Ellis home. Plaintiffs further contend that these allegations are "conclusive proof for the liability of the defendants for their breach of their duties of care and contractual duties as alleged above. The Plaintiffs are, accordingly, entitled to Summary Judgment on the issue of the liability of the defendants." Dkt. No. 18 ¶ 54. This Count does not attempt to state a claim for relief but merely makes arguments

regarding liability. Thus, there is no cause of action, and the claim is due to be dismissed for failure to state a claim.

For these reason, Defendants Motion to Dismiss with respect to Counts III, IV, and VIII is due to be **GRANTED**.

**IV. The Amended Complaint Fails to State a Claim for Breach of a Private Duty**

Count V of the Amended Complaint alleges that Defendants "either intentionally or negligently breached their private duty to not advertise that it was beginning foreclosure on the Ellis home when there was no default under the Security Deed." Dkt. No. 18 ¶ 32. Plaintiffs allege that the private duty was created from seven sources: (1) the reverse mortgage; (2) the reverse mortgage advertising of AAG; (3) Sean O'Brien's representation that the Ellis Estate would have a year to sell the Ellis home after his death; (4) the affirmation and confirmation of the policy by the HUD-required reverse mortgage counselor; (5) representations by AAG shortly after Dr. Ellis's death; (6) representations by AAG in December 2015; and (7) Dr. Ellis and the Ellis Estate's detrimental reliance upon these representations. Plaintiffs further aver that O.C.G.A. § 51-1-8 permits claims for the breaches of the private duties allegedly created from these seven sources.

O.C.G.A. § 51-1-8 provides: "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give

a right of action." While this Section does state that "violation of a private duty, accompanied by damage, shall give a right of action," id., Georgia courts have interpreted the statute to not create an independent cause of action. See Gobran Auto Sales, Inc. v. Bell, 783 S.E.2d 389, 393 (Ga. Ct. App. 2016) (alteration in original) (stating that O.C.G.A. §§ 51-1-6 and 51-1-8 "do not create causes of action, but simply set forth general principles of tort law, 'authoriz[ing] the recovery of damages for the breach of a legal duty otherwise arising, though not expressly stated, under a statute or common law'") (quoting Bridges v. Wooten, 700 S.E.2d 678 (Ga. App. 2010)); see also Reilly v. Alcan Aluminum Corp., 528 S.E.2d 238, 240 (Ga. 2000) (stating that O.C.G.A. "§§ 51-1-6 and 51-1-8 merely set forth general principles of tort law"). Under Georgia law, it is not plausible that Plaintiffs state a claim or claims for breach of a private duty under O.C.G.A. § 51-1-8, when this statute "merely set[s] forth general principles of tort law." 528 S.E.2d at 240.

For these reasons, Defendants' Motion to Dismiss with respect to Plaintiffs' breach of private duty claims, Count V of the Amended Complaint, is due to be **GRANTED**.

AO 72A
(Rev. 8/82)

**V. The Amended Complaint Fails to State a Claim for Breach of Fiduciary Duty**

Count VI of the Amended Complaint is titled "Breach of Fiduciary Duty," and alleges that AAG's representatives created a fiduciary duty with Dr. Ellis and the Ellis Estate and that this duty was breached by Defendants "failing to disclose the risk of mistaken foreclosure or mistaken attempted foreclosure." Dkt. No. 18 ¶ 42. Plaintiffs also allege that Defendants had a "fiduciary duty to the Ellis Estate to guarantee that there could be no attempted wrongful foreclosure," id. ¶ 45, and that this duty was breached because AAG "fail[ed] to exercise due care in creating an operating and management system for itself that would create a failsafe system that would, as a trusted advisor and fiduciary, prevent any mistaken or negligent wrongful attempted foreclosure," id. ¶ 44.

Plaintiffs cannot show that it is plausible that a fiduciary duty existed. Under Georgia law, "[f]iduciary duties and obligations are owed by those in confidential relationships, i.e., relationships 'where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.'" Atlanta Mkt. Ctr. Mgmt., Co. v. McLane, 503 S.E.2d 278, 281 (Ga. 1998) (quoting

AO 72A
(Rev. 8/82)

O.C.G.A. § 23-2-58). Because a confidential relationship is the basis for fiduciary duties, parties that contract at arm's length cannot be in a fiduciary relationship. See, e.g., Pardue v. Bankers First Fed. Sav. & Loan Ass'n, 334 S.E.2d 926, 927 (Ga. Ct. App. 1985) ("There is, moreover, *particularly* no confidential relationship between lender and borrower or mortgagee and mortgagor for they are creditor and debtor with clearly opposite interests."); Phillips v. Atl. Bank & Tr. Co., 309 S.E.2d 813, 814-15 (Ga. Ct. App. 1983) (finding that "[c]reditors deal with debtors at arm's length, and do not stand in a fiduciary capacity in relationship to the debtor," this is so "'[e]ven if a party places special trust and confidence in a bank or its officers'") (quoting Wall v. Fed. Land Bank, 274 S.E.2d 753, 757 (Ga. Ct. App. 1980)). Thus, Plaintiffs fail to show that it is plausible that a fiduciary duty existed between Defendants and Plaintiffs. Accordingly, Defendants' Motion to Dismiss with respect to Plaintiffs' breach of fiduciary duty claims, Count VI of the Amended Complaint, is due to be **GRANTED**.

**VI. The Amended Complaint Fails to State a Claim for Breach of a Private Duty**

Count VII of the Amended Complaint alleges that Defendants violated a private duty by committing "Elder Abuse" as defined in the Disable Adults and Elder Persons Protection Act, O.C.G.A. § 30-5-1 *et seq.*, when Defendants negligently or intentionally

wrongfully attempted to foreclose on the Ellis home. Defendants argue that Plaintiffs cannot establish such a duty under Georgia's elder abuse reporting statute, and that Plaintiffs have not pleaded factual allegations establishing a plausibility of elder abuse as defined in the Act.

The Disabled Adults and Elder Persons Protection Act states that its purpose "is to provide protective services for abused, neglected, or exploited disabled adults and elder persons." O.C.G.A. § 30-5-2. The Section of the Act titled "Unlawful Acts" makes it "unlawful for any person or official required by paragraph (1) of subsection (a) of Code Section 30-5-4 to report a case of disabled adult or elder person abuse to fail knowingly and willfully to make such report." O.C.G.A. § 30-5-8(a)(1). Section 30-5-4(a)(1) is a list of categories of persons, such as physical therapists, clergy members, and coroners. Not included in that list of persons are mortgagors, lenders, or bankers, or any person in the finance industry. The Act, then, establishes criminal liability for certain persons who fail to report elder abuse.

Plaintiff argues that O.C.G.A. § 51-1-8 in conjunction with the Act creates a private duty "to not abuse the special protected class of the elderly." Dkt. No. 18 ¶ 50. O.C.G.A. § 51-1-8 provides: "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."

Georgia courts have interpreted this statute to set forth general principles of tort law. See Gobran Auto Sales, Inc. v. Bell, 783 S.E.2d 389, 393 (Ga. Ct. App. 2016) (alteration in original) (stating that O.C.G.A. §§ 51-1-6 and 51-1-8 "do not create causes of action, but simply set forth general principles of tort law, 'authoriz[ing] the recovery of damages for the breach of a legal duty otherwise arising, though not expressly stated, under a statute or common law'") (quoting Bridges v. Wooten, 700 S.E.2d 678, 680 (Ga. App. 2010)); see also Reilly v. Alcan Aluminum Corp., 528 S.E.2d 238, 240 (Ga. 2000) (stating that O.C.G.A. "§§ 51-1-6 and 51-1-8 merely set forth general principles of tort law"). It is not plausible that a statute criminalizing the failure by certain persons to report known elder abuse creates a private duty that is breached by a wrongful foreclosure attempt on property of the estate of a deceased person who was an elder (as defined by the statute). This is especially so considering that the attempted vehicle for the creation of the duty, O.C.G.A. § 51-1-8, has been interpreted to not create a cause of action but merely to state general principles of tort law.

Further, Plaintiffs ask rhetorically: "Could the defendants possibly be contending that elder abuse is not subject to a civil legal remedy to be compensated by damages, and that elder abuse is not itself tortious conduct entitling an injured party to relief in court?" Dkt. No. 21 at 16. Nevertheless, the allegations in

16

the Amended Complaint do not constitute elder abuse under the Act. The Act defines "Abuse" as "the willful infliction of physical pain, physical injury, sexual abuse, mental anguish, unreasonable confinement, or the willful deprivation of essential services to a disabled adult or elder person." O.C.G.A. § 30-5-3(1). The allegedly abusive conduct of wrongful attempted foreclosure occurred after Dr. Ellis's death. Thus, no pain or anguish or deprivation of essential services could have been inflicted upon Dr. Ellis.

Not only have Plaintiffs failed to plausibly allege the existence of a private duty, but Plaintiffs have also failed to allege facts showing that such a duty—as established by the Disabled Adults and Elder Persons Protection Act—was plausibly breached by Defendants. For these reasons, Defendants' Motion to Dismiss with respect to Plaintiffs' elder abuse claim, Count VII of the Amended Complaint, is due to be **GRANTED**.

## VII. The Amended Complaint Fails to State a Claim for Misrepresentation and Fraud

Count IX of the Amended Complaint alleges that Defendants committed fraud by listing the "amount of indebtedness under the Reverse Mortgage . . . as being $938,250" when the actual amount of money disbursed to Dr. Ellis, the borrower, was $259,205.09. Dkt. No. 18 ¶ 58. In Georgia, "[t]he five elements essential to a tort suit for damages resulting from a material misrepresentation

constituting fraud are: (1) that the defendant made the representations; (2) that at the time he knew they were false; (3) that he made them intending to deceive the plaintiff; (4) that the plaintiff justifiably relied on the representations; and (5) that the plaintiff sustained the alleged loss and damage as the proximate result of their having been made." Dyer v. Honea, 557 S.E.2d 20, 24 (Ga. Ct. App. 2001) (citation omitted). Under Federal Rule of Civil Procedure 9(b), a plaintiff "alleging fraud or mistake . . . must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." The Eleventh Circuit has "held that pursuant to Rule 9(b), a plaintiff must allege: '(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010) (quoting Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

Plaintiffs' allegation that the Security Deed falsely stated the "amount of indebtedness under the Reverse Mortgage . . . as being $938,250 on page 1 of the Reverse Mortgage" misreads and consequently misstates the language of the Security Deed. The

AO 72A
(Rev. 8/82)

Security Deed states in relevant part: "This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest at a rate subject to adjustment (interest), and all renewals, extensions and modifications of the Note, *up to a maximum principal amount* of Nine Hundred Thirty Eight Thousand, Two Hundred Fifty Dollars and Zero Cents (U.S. $938,250.00)." Dkt. No. 18-1 at 1 (emphasis added). Thus, the Security Deed explicitly states that the principal amount after "all renewals, extension and modifications" of the loan was capped at $938,250. Id. Plaintiffs, then, simply misread the Security Deed because it does not state, as they allege, that the "amount of indebtedness under the Reverse Mortgage . . . as being $938,250." Dkt. No. 18 ¶ 58.

Plaintiffs' fraud claim must fail for an additional reason: Dr. Ellis could not plausibly have been misled or relied on the allegedly false statement in the Security Deed. In Georgia,

> [a] party to a contract who can read, must read or show a legal excuse for not doing so, and ordinarily if fraud is an excuse, it must be such fraud as would prevent the party from reading the contract. One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship or trust or confidence exists. . . . Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud.

Life Ins. Co. of Virginia v. Conley, 351 S.E.2d 498, 500 (Ga. Ct. App. 1986) (internal quotation marks and citations omitted). Here, Georgia law bars this claim absent allegations showing it was

plausible that fraud prevented Dr. Ellis from *reading* the contract. No such allegations have been pleaded. For this additional reason, Plaintiffs' fraud claim fails.

For these reasons, Defendants' Motion to Dismiss with respect to Plaintiffs' misrepresentation and fraud claim, Count IX of the Amended Complaint, is due to be **GRANTED**.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint is **GRANTED** with respect to MERS. MERS is hereby **DISMISSED** from this action. The Motion to Dismiss is **GRANTED in part and DENIED in part** with respect to Defendant AAG. The Motion is **GRANTED** with respect to AAG for Counts III-IX. The Motion is **DENIED** with respect to AAG for Counts I and II. Thus, the only surviving claims are Counts I and II against AAG.

**SO ORDERED**, this 26th day of August, 2019.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA